IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | : | CRIMINAL ACTION |
| of AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| MIGUEL BELL | : | No. 09-672 |

MEMORANDUM

PRATTER, J.                                                                                          JUNE 13, 2011

INTRODUCTION

Miguel Bell has been charged with committing bank fraud, in violation of 18 U.S.C. § 10344; aggravated identity theft, in violation of 18 U.S.C. § 1028A; conspiracy to commit bank fraud and aggravated identity theft, in violation of 18 U.S.C. § 371; and with aiding and abetting crimes committed by other individuals, in violation of 18 U.S.C. § 2.

Mr. Bell now moves to suppress certain evidentiary evidence on the ground that it was seized in violation of his rights under the Fourth Amendment. For the reasons set forth below, Mr. Bell's Motion to Suppress Physical Evidence will be denied.

FACTUAL BACKGROUND

The relevant facts of the case are, in brief, as follows. In 2005, the United States Postal Inspection Service ("USPIS") and the United States Secret Service began to investigate a series of identity theft crimes that they believed to be related. During this investigation, federal agents came to believe that these crimes had been committed by an identity theft ring led by Mr. Bell.

On October 15, 2009, Mr. Bell was indicted by a federal grand jury in connection with these alleged crimes, and a warrant was issued for his arrest. On the morning of October 20,

while surveilling a residence in Bear, Delaware that was owned by the mother of a child of Mr. Bell, federal agents saw Mr. Bell get into a green Range Rover with Pennsylvania tag number GZL2100 and drive away from the residence. Federal agents observed the Range Rover as it proceeded from Delaware to the Delaware County, Pennsylvania Probation Office in Media, Pennsylvania. When Mr. Bell arrived at the Probation Office, he was arrested, and a Secret Service agent read Mr. Bell a *Miranda* warning.

Federal officers located the Range Rover, which was parked approximately five blocks from the Probation Office, and took photographs of the vehicle and items that were in plain view on its seats, including a Dell laptop computer, a cellular telephone, and a backpack. Meanwhile, Mr. Bell was taken to the local headquarters of the USPIS, where he was questioned by two postal inspectors. Before questioning Mr. Bell, these inspectors again provided him with a *Miranda* warning.

Mr. Bell initially told the postal inspectors that he had taken the bus to the Probation Office. After the inspectors revealed that agents had located the Range Rover, Mr. Bell said that the vehicle belonged to his sister, Rhonda Bell. The inspectors called a number for Ms. Bell that was provided by Mr. Bell, and spoke to a woman who said that she was Mr. Bell's sister Rhonda Bell and that she owned the Range Rover and the Dell laptop contained therein. Mr. Bell offered a different story, however, telling a Secret Service agent that he had received the laptop one day earlier from men who were involved in identity theft crimes.

Based upon the inconsistent statements of Mr. Bell and Rhonda Bell regarding the ownership and provenance of the laptop, upon Mr. Bell's suggestion that the laptop's true owners were men involved in identity theft, and upon Mr. Bell's initial false statement that he had taken

2

the bus to the Parole Office, as well as other information provided by cooperating witnesses, the Government obtained a search warrant for the Ranger Rover, the Dell laptop, the contents of the backpack in the Range Rover, and a cellular phone in the Range Rover. This warrant was issued by United States Magistrate Judge Thomas Reuter on October 22, 2009.

After federal agents had executed this first search warrant, the Government obtained a second warrant, which provided authorization to search seven cellular telephones and a Magellan GPS that had been seized during the execution of the search warrant for the Range Rover. This warrant, which was issued on October 24, 2009, was based on information provided by a number of cooperating witnesses, including that: Mr. Bell often carried more than one cellular telephone; Mr. Bell used these phones to contact other individuals in the identity theft ring; Mr. Bell often changed the phone that he was using; and Mr. Bell used a GPS device to determine the location of bank branches where he would commit identity theft crimes. After the issuance of the second warrant, federal agents searched the seven phones and the GPS device.

**DISCUSSION**

Mr. Bell has challenged the searches of the Range Rover and items therein on the grounds that these searches: (1) were conducted "without a lawful and valid search warrant"; (2) were conducted "in the absence of probable cause and/or exigent circumstances"; (3) were conducted without the consent of the owner(s) of these items; and also on the ground that (4) the second search warrant was not based upon probable cause because it is "deficient on its face, contains information that is stale, and emanates from unreliable individuals." He seeks the suppression of all physical evidence seized from the Range Rover.

3

Even if one of these arguments was sound, the searches of the Range Rover and the items therein undoubtedly fall within the good faith exception to the warrant requirement. Where, as here, "a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing court to turn immediately to a consideration of the officers' good faith." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002) (citations omitted). Mr. Bell's argument does not involve any "novel questions of law whose resolution is necessary to guide future action by law enforcement officers and magistrates," and therefore this Court must first determine whether the good faith exception to the warrant requirement applies. *Id.*

The good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Williams*, 3 F.3d 69, 74 (1993); *see United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Hodge*, 246 F.3d at 307; *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 145. The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. *Leon*, 468 U.S. at 922 (holding that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, ... for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting

4

the search."); *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 146.

Here, the affidavits in support of the search warrant provided detailed information of criminal activity. Under these circumstances, it was objectively reasonable for the officers conducting the search to believe that probable cause for the warrant was stated and to rely in good faith on the warrant as issued. *United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of motion to suppress due to applicability of good faith exception); *United States v. Kepner*, 843 F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in good faith on valid search warrant); *United States v. Wecht*, 2006 WL 1669879 (W.D. Pa. Jun. 13, 2006) (denying motion to suppress evidence recovered from physician's office because search team members acted reasonably and in good faith in relying on warrant and affidavit). Given that the two challenged searches of the Range Rover and items therein were conducted in good faith reliance upon search warrants issued by federal magistrate judges, supported by detailed affidavits, none of the physical evidence that was collected during these searches must be suppressed.

## Conclusion

For the reasons set forth above, Mr. Bell's Motion to Suppress Physical Evidence will be denied. An Order to this effect follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE