IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION No. 13-5809 |
| | : | |
| v. | : | CRIMINAL ACTION NO. 09-672 |
| | : | |
| MIGUEL BELL, | : | |
| | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                                                     JULY 5, 2016

In his § 2255 petition, Miguel Bell raises several challenges to his sentence for conspiracy to commit bank fraud and aggravated identity theft. Mr. Bell claims that counsel provided ineffective assistance and that he was denied due process of law. The Government argues that Mr. Bell's counsel provided him with competent representation and that his trial met the requirements of due process.

Having reviewed the briefing of the parties as well as the record at trial, over which this Court presided, the Court finds that Mr. Bell's arguments are without merit and that his counsel competently represented him throughout the proceedings and that his constitutional rights were not denied. Therefore, the Court will deny Mr. Bell's petition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2009, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Mr. Bell—along with four other individuals—with conspiracy to commit bank fraud and aggravated identity theft, as well as substantive acts of bank fraud and aggravated identity theft. This indictment was the culmination of an investigation, initiated in 2005 by the United States Postal Inspection Service ("USPIS") and the United States Secret Service. Mr.

Bell and the other co-defendants conspired to use certain bank account and identity information from victims to cash fraudulent checks against which the defendants fraudulently withdrew cash from the victims' accounts. A superseding indictment was filed on February 18, 2010, which charged Mr. Bell with conspiracy to commit bank fraud and aggravated identify theft, in violation of 18 U.S.C. § 371 (Count 1); 11 counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 2-9 and 44-46); and 41 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (c)(5) (Counts 10-43) and 47-53).

Mr. Bell was arrested on October 20, 2009, outside the Delaware County, Pennsylvania Probation Office in Media, Pennsylvania. After making the arrest, Mr. Bell was provided *Miranda* warnings. Federal postal inspectors took photographs of Mr. Bell's vehicle and items that were in plain view on the car seats, including a Dell laptop computer, a cellular telephone, and a backpack. Mr. Bell was taken to the local headquarters of the USPIS and questioned by two postal inspectors. Before questioning Mr. Bell, the inspectors again provided him with a *Miranda* warning.

Mr. Bell initially told the postal inspectors that he had taken the bus to the probation office. After the inspectors revealed that they had located his vehicle, Mr. Bell said that the vehicle belonged to his sister, Rhonda Bell. The inspectors called a number for Ms. Bell that was provided by Mr. Bell and spoke to a woman who identified herself as Mr. Bell's sister. The woman told the postal inspectors that she owned the vehicle and the Dell laptop. Later, however, Mr. Bell offered a different story, telling a Secret Service agent that he had received the laptop one day earlier from men who were involved in identity theft crimes.

Based on the information, as well as information gathered from cooperating witnesses through the course of investigation, United States Postal Inspector Frank Busch applied for, and

obtained, a warrant to search the vehicle as well as the laptop, backpack, and phone that Mr. Bell admitted were in the vehicle. During execution of the initial search warrant, law enforcement agents recovered seven cellular phones and a Magellan GPS unit from the vehicle. Inspector Busch then applied for, and received, a second search warrant for the items recovered. Inspector Busch stated that based on his training, knowledge, and experience, as well as information provided by witnesses and Mr. Bell, there was "probable cause to believe that contact information for, and records of telephone calls to, other individuals involved in bank fraud and aggravated identity theft activities with Bell [would] be found stored in the seven cellular telephones" recovered in the vehicle. Recovered from two of those cell phones were contact lists and call details that related to the bank fraud.

On June 8, 2011, Mr. Bell filed a motion to suppress "items from the Range Rover" and contents of "electronic items" seized from the vehicle. Mr. Bell alleged that the seizure occurred without a valid search warrant, without probable cause, and without the consent of the owner of the car. Moreover, Mr. Bell claimed that the search warrant used to seize and search the phones and GPS units was deficient on its face, contained stale information and was based on information from "unreliable individuals." On June 13, 2011, following a hearing on the issue, the Court denied the motion to suppress, holding that "[e]ven if one of [Bell's] arguments was sound, the searches of the Range Rover and the items therein undoubtedly fall within the good faith exception to the warrant requirement."

Mr. Bell was originally represented in this matter by private counsel, but on January 19, 2011, the district court granted counsel's motion to withdraw and appointed attorney Louis Busico to represent Mr. Bell.

The trial began on June 15, 2011. The Government presented numerous witnesses over an eight-day period, including bank fraud investigators, local and federal law enforcement officers, bank customer victims, a computer forensic analyst, bank employees and an insurance company employee who provided Mr. Bell with customer information, as well as individuals recruited by Mr. Bell and others to conduct the fraudulent transactions in bank customers' names.

On June, 24, 2011, after the Government rested its case, Mr. Bell's counsel made an oral motion for acquittal, arguing that the government had failed to allege an essential element of the crime of bank fraud. Mr. Bell based the motion on a typographical error included in the indictment, which alleged that the banks named were insured by the "Federal Deposit Corporation," a nonexistent entity. Mr. Bell argued that the grand jurors did not find probable cause for an element of the crime of bank fraud. Acknowledging the typographical error in the indictment, the government filed a motion to amend/correct the technical error. The Court granted the motion to amend so that the indictment read the "Federal Deposit Insurance Corporation." The Court denied Bell's motion for acquittal.

On June 27, 2011, a jury convicted Miguel Bell on Counts 1 through 37, 42, and 44 through 53. On November 28, 2011 the Court sentenced Mr. Bell to a sentence of 186 months imprisonment. The Court also imposed a five-year period of supervised release and a special assessment of $4,800.

Mr. Bell filed a timely appeal claiming: (1) that the typographical error in the indictment violated the Presentment Clause of the Fifth Amendment; and (2) that the search warrant regarding the seven cell phones found in his vehicle, was overbroad. The Third Circuit Court of

Appeals affirmed Mr. Bell's conviction. *See United States v. Bell*, 500 Fed. App'x. 133 (3d Cir. 2012).

Following the decision by the Third Circuit Court of Appeals, Mr. Bell filed a *pro se* motion under 18 U.S.C § 2255, asking the Court to vacate, set aside or correct his sentence on four identified grounds related to ineffective assistance of his trial counsel. The Government filed a response in opposition to this motion. Subsequently, Mr. Bell filed a second *pro se* motion under § 2255, which added five additional grounds to the four initially alleged. This motion also included a lengthy memorandum of law as an exhibit to the filing. The Government filed a response in opposition to this motion as well.

## II.  LEGAL STANDARD

Section 2255 allows a prisoner in custody to challenge his sentence if it was "imposed in violation of the Constitution or laws of the United States, or [] the court was without jurisdiction to impose such sentence, or [] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. A petitioner may only prevail on a Section 2255 claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands on fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

Mr. Bell has filed his § 2255 petition *pro se*. Admittedly, for practical purposes, *pro se* pleadings are held to a less stringent than pleadings drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, Mr. Bell's *pro se* habeas petition is construed liberally. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

## III. DISCUSSION

The gravamen of Mr. Bell's motions are allegations of ineffective assistance by his trial counsel. As such, the Court's analysis is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-pronged test under *Strickland*. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defendant by resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Id.* Judicial scrutiny of counsel's performance must be "highly deferential" and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In determining whether assistance of counsel has been ineffective, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* If a defendant fails to satisfy one prong of the *Strickland* test, a court need not consider the other prong. *Id.* at 697.

### A. Ground 1

Mr. Bell first claims that he was deprived of his Sixth Amendment right to counsel during the pre-trial phase because his trial counsel was subject to a "conflict of interest" and neglected "to give [Mr. Bell] full discovery" or "communicate with petitioner for the preparation for trial."

Taking these allegations in turn, first, there is no indication in the record that Mr. Bell's counsel was subject to an improper conflict of interest. The Sixth Amendment guarantee of effective assistance of counsel includes the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflicts of

6

interest. *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). To establish that a conflict of interest exists, a petitioner must show the existence of multiple representations and an actual conflict of interest which adversely affected counsel's performance. *Id.*

Mr. Bell makes no showing that multiple representations or an actual conflict of interest existed. Instead, Mr. Bell merely contends at a pre-trial meeting there was a disagreement regarding Mr. Bell's "complaining to the Court" about Mr. Busico's representation. A disagreement over trial strategy does not constitute a conflict of interest. *See e.g., Strickland* 466 U.S. at 690. Therefore, Mr. Bell fails to show that ineffective assistance of counsel was provided because of a conflict of interest.

Next, Mr. Bell contends that the lack of communication in the pre-trial period on its own constitutes ineffective assistance of counsel because Mr. Busico did not promptly respond to Mr. Bell's request for "discovery and other documents for preparation and defense." A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland* 466 U.S. at 690. An attorney's duty to investigate is judged under a reasonableness standard based on "prevailing professional norms." *Marshall v. Cathel*, 428 F.3d 452, 463 (3d Cir. 2005). Mr. Bell's claim that counsel rendered ineffective assistance of counsel by not fully communicating with him prior to trial does not overcome the presumption of reasonableness. Mr. Bell also contends that Mr. Busico did not fully prepare for trial. However, the papers indicate that Mr. Busico met with Mr. Bell on more than one occasion leading up to trial. Mr. Bell's claim that Mr. Busico's lack of preparation forced Mr. Bell to file a pre-trial *pro se* motion without assistance of counsel is rebutted by the record—the docket shows no such *pro se* motions filed by Mr. Bell prior to his June 15, 2011 trial. Finally, Mr. Bell identifies no

7

evidence that he would have used to prepare for trial or file pretrial motions, much less evidence that would have been sufficient to undermine confidence in the outcome of the trial.

### B. Ground 2

Mr. Bell next contends that counsel was ineffective for failing to communicate with petitioner during the appeals process.[1] To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Here, Mr. Bell fails to explain how a lack of communication prejudiced the outcome of his the appeal. Mr. Bell contends that Mr. Busico handled the appellate brief "unreasonably" and exercised "bad professional judgment" and failed to adequately communicate during the appeal process, but does not provide further information as to how—if at all—this affected the outcome. *See U.S. v. Bell* 500 Fed. App'x. 133 (3d Cir. 2012). His conclusory allegations are not sufficiently substantiated to overcome the presumption of reasonableness. Moreover, Mr. Bell fails to show how the alleged unreasonableness of his counsel's conduct undermines confidence in the outcome of the appeal.

### C. Ground 3

Mr. Bell next claims his trial counsel was ineffective in relation to his failure to object and argue the denial of the motion of acquittal. This argument specifically alleges the existence of a certain *ex parte* discussion and communication between the prosecutor and the Court. First, Mr. Bell points to no evidence that such *ex parte* communication took place. Mr. Bell claims that the trial testimony "permits an inference" that the prosecutor conducted an "ex parte

---

[1] Mr. Bell's motion refers to the "direct view process." The Court will assume that this refers to the direct appeals process.

8

meeting/discussion with the Court on the evening of June 23." However, the record simply does not permit such an inference to be drawn. On June, 24, 2011, after the Government rested its case, Mr. Bell made an oral motion for acquittal, arguing that the Government had failed to allege an essential element of the crime of bank fraud. Acknowledging the typographical error in the indictment, the Government filed a motion to amend/correct the technical error. The Court granted the motion to amend so that the indictment read "Federal Deposit Insurance Corporation," and denied Mr. Bell's motion for acquittal. Mr. Bell alleges that an inference of *ex parte* communication can be drawn from the following statement made by the Court in ruling on the motion to amend: "I appreciate the fine legal work that occurred last night by Miss Newton and I found it most helpful as well." T.T. 06/24/11 p. 6 L.15-18. However, no such inference of an *ex parte* communication can be drawn from such a statement. Mr. Bell provides no further evidence that any such communication occurred. Finally, on appeal the Third Circuit Court of Appeals observed that "Bell's argument that the District Court impermissibly allowed amendment of the indictment is without merit." *United States v. Bell*, 500 Fed. App'x. 133, 136 (3d Cir. 2012).

Given that Mr. Bell has provided no basis to show that any *ex parte* communication took place, the Court finds that there is no basis to hold that trial counsel was ineffective for failing to object to the motion on this ground.

**D. Ground 4**

Mr. Bell claims that counsel was ineffective for failing to object after trial and at sentencing to the bank fraud loss and intended loss. In essence he claims that his counsel should have challenged the amount of loss attributable to the conspiracy in the context of settlement.

He also argues that his counsel failed to adequately advise him regarding the impact of amount of loss on the sentencing calculation.

To establish prejudice under *Strickland,* the defendant must prove that, but for counsel's error, there is a reasonable probability the outcome of the proceeding would have been different. 466 U.S. at 694. Courts applying *Strickland*'s prejudice test must consider the strength of the evidence against the defendant. *See United States v. Calhoun*, 600 F. App'x 842, 844 (3d Cir. 2015). In calculating the amount of loss generated by fraud, a sentencing court may include amounts directly attributable to the fraudulent conduct of the defendant. *See* U.S.S.G. § 1B1.3(a)(1)(A). In addition, where the crime of fraud for which the defendant has been convicted involves jointly undertaken criminal activity, the sentencing court may also attribute to the defendant amounts of loss resulting from the "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *See* U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Duliga*, 204 F.3d 97 (3d Cir. 2000). The loss resulting from the acts or omissions of others must be: (1) in furtherance of the jointly undertaken activity; (2) within the scope of the defendant's agreement; and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake. *Duliga*, 204 F.3d at 100-01.

Here, the Government presented undisputed evidence at trial as to the loss amounts for each of the defrauded banks was over $2,000,000. In addition, the Government established at trial that Mr. Bell was a key player in the fraud from its inception to its conclusion and that the losses generated by the scam were reasonably foreseeable in connection with the scope of the criminal activity Mr. Bell agreed to jointly undertake. He was more than aware of the scope of the operation and its fraudulent character. Mr. Bell's sentence was based on losses and intended losses of more than $1,000,000 and not more than $2,500,000. Mr. Bell cannot show that any of

counsel's alleged unreasonable activity, even if valid, was prejudicial because there was no reasonable probability the outcome of the proceeding would have been different had counsel objected to the loss amount.

### E. Grounds 5 & 6

Mr. Bell's claims labeled "Ground Five" and "Ground Six" in his second motion to vacate his sentence, concern his trial counsel's failure to object to the amount of loss used at sentencing. Mr. Bell claims that counsel was ineffective for not challenging the amount of loss contained in the Pre-Sentence Investigation Report as well as failing to object to the use of that amount at sentencing. As already noted, the Government presented undisputed evidence at trial that the loss amounted to over $ 2,000,000. In addition, the Government established that Mr. Bell was aware of the scope of the operation and its fraudulent character. Mr. Bell's sentence was based on losses and intended losses of more than $ 1,000,000 and not more than $ 2,500,000. Because the evidence presented at trial establishes that Mr. Bell was responsible for the losses and intended losses. Mr. Bell presents no reason why a failure to object to the well-established loss amount at sentencing constituted ineffective assistance of counsel.[2]

---

[2] Mr. Bell attached a 79 page Memorandum of Law to his second motion to vacate his sentence, in which he provides further argument regarding his claims. As to Grounds Five, Six, Seven and Eight, however, there appears to be some discrepancy between the character of the claims alleged in the motion and the factual arguments presented in the briefing. Having reviewed the arguments in the briefing, to the extent that they differ from the arguments in the motion, the Court finds that they too are without merit.

In his briefing under the heading "Ground Five", Mr. Bell contends that counsel was ineffective for not fully litigating, and thereby preserving the Rule 29(b) motion for acquittal. However, this claim has no support in the record. Mr. Bell appealed the case on the grounds that the motion for acquittal was improperly denied because the Court erred in allowing the government to amend the indictment. *See United States v. Bell*, 500 Fed. App'x. 133 (3d Cir. 2012). The record demonstrates the issue was fully litigated and Mr. Bell was not denied his right to appeal.

Similarly, under the heading "Ground Six" in his briefing, Mr. Bell contends that counsel was ineffective for failing to challenge the four level enhancements applied for Mr. Bell's role in the offense. Mr. Bell's claim is groundless as it is based on a misreading of the Sentencing Guidelines. Mr. Bell points to language contained in the Sentencing Guidelines regarding the inapplicability of certain Chapter Two Enhancements for identity theft convictions. U.S.S.G. 2B1.6. However, the "Role in Offense" enhancement is a Chapter Three Enhancement so that the language in U.S.S.G 2B1.6 does not extend to the applied enhancement. *See* U.S.S.G. 3B1.1. Because the application of the enhancement was appropriate, counsel was not ineffective for failing to raise a meritless claim.

### F. Ground 7

Under "Ground Seven" in his second motion to vacate, Mr. Bell claims that his trial counsel was ineffective for failing to argue that the warrant authorizing the search of multiple cellular telephones recovered at the time of Mr. Bell's arrest was overbroad. By failing to raise this argument, Mr. Bell asserts that his counsel cause the objection to be waived for purposes of appeal.

Under *Strickland,* the defendant must prove that but for counsel's error, there is a reasonable probability the outcome of the proceeding would have been different. 466 U.S. at 694. Courts applying *Strickland*'s prejudice test must consider the strength of the evidence against the defendant. *See United States v. Calhoun*, 600 F. App'x 842, 844 (3d Cir. 2015).

The remedy for an overbroad warrant is suppression of evidence that is seized pursuant to the part of the warrant that is overly broad. *See United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002). Mr. Bell's briefing to the Third Circuit Court of Appeals conceded that the affidavit established probable cause to search the cell phones' address directories, call logs, and stored voice mails and text messages. Appellant Br., *United States v. Bell*, 2012 WL 474985, at *27, (3d Cir. Feb. 6, 2012). Therefore, assuming the affidavit in support of the warrant failed to present probable cause to justify the examination of "photos, videos, or Internet browsing history" in the subject phones, as alleged by Mr. Bell, the remedy would be to suppress those items only. However, at trial, no photos, videos, or Internet browsing history from any of the phones was introduced. The only evidence admitted from the search of the cell phones seized was a contact entry for a co-conspirator and records of recent calls made on one of those cell phones to bank toll-free number. Mr. Bell conceded that probable cause for seizure of those

12

items was established in the search warrant affidavit. Therefore, Mr. Bell cannot show prejudice exists for counsel's failure to raise the argument of overbreadth at trial.[3]

### G. Ground 8

In the moving papers, Mr. Bell contends that counsel was ineffective for not objecting to the role of Post Inspector Frank Busch in the investigation and prosecution of the case as his involvement allegedly overstepped his statutory authorization under 18 U.S.C. § 3061.

The United States Postal Inspection Service has the authority "to the extent authorized by the Attorney General pursuant to agreement between the Attorney General and the Postal Service, in the enforcement of other laws of the United States, if the Attorney General determines that violations of such laws have a detrimental effect upon the operations of the Postal Service." 18 U.S.C.A. § 3061(b)(2). Even if an inspector oversteps the statutory grant of authority, neither a reversal of conviction nor suppression of any evidence obtained would be an appropriate remedy. *See, e.g.*, *United States v. Jones*, 13 F.3d 100, 103 (4th Cir. 1993) (finding that the appropriate remedy for an unauthorized investigation would not be suppression of the evidence obtained nor reversal of the conviction); *see also United States v. Lustig*, 865 F.2d 41, 43 (2d Cir. 1989) (holding that exclusion of evidence might be appropriate only in the event of widespread or repeated violations).

---

[3] As with Grounds Five and Six, there is also a discrepancy between the claims alleged in the motion and the arguments raised in his briefing with regards to "Ground Seven." Under the heading of "Ground Seven" in his briefing, Mr. Bell contends that the Court committed an error in applying the "Role in Offense" enhancement to Mr. Bell's sentence. As noted, this claim is based on a misreading of the Sentencing Guidelines. *See* Footnote 2, *supra*. Moreover, because claims regarding errors in application of the Sentencing Guidelines are neither constitutional nor jurisdictional, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal. *See Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996); *see also United States v. Essig*, 10 F.3d 968, 977 n.25, 979 (3d Cir. 1993)(noting that by failing to raise issue on direct appeal, defendant waived the prior question of whether the sentencing error constituted plain error). Because Mr. Bell did not raise an argument regarding the proper application of the Sentencing Guidelines on direct appeal, such claims are not to be considered on a § 2255 motion.

Mr. Bell cannot establish that his trial counsel's failure to object to Inspector Busch's involvement in the investigation and prosecution was either unreasonable or prejudicial. First, Inspector Busch was authorized to conduct the investigation. Mr. Bell was charged and convicted under 18 U.S.C. § 1028(a). Under 18 U.S.C. § 3061(b)(2), Inspector Busch had the statutory authority to participate in the investigation pursuant to an agreement between the Attorney General and the Postal Service to enforce other laws of the United States, including 18 U.S.C. § 1028(a ). *See, e.g.*, *United States v. Tolliver*, 451 F. App'x 97, 100 (3d Cir. 2011)(upholding conviction under 18 U.S.C § 1028(a based on investigation and testimony of Postal Inspector Frank Busch). Consequently, there is no basis to conclude Inspector Busch exceeded his statutory authority by serving as a lead agent in the investigation. As such, Mr. Busico's decision not to object to Inspector Busch's involvement in the investigation is well within the bounds of reasonable representation.

Furthermore, even if counsel were demonstrably unreasonable in not objecting to Inspector Busch's involvement in the investigation, Mr. Bell has not established how this prejudiced the outcome of the case. As the Fourth Circuit Court of Appeals noted, neither reversal of conviction nor suppression of any evidence obtained would be an appropriate remedy to a technical overstepping of statutory authority. *See United States v. Jones*, 13 F.3d 100, 103 (4th Cir. 1993); *see also Murray v. United States, No.* CIV.A. 07-3360 (JEI), 2008 WL 2622847, at *4 (D.N.J. June 30, 2008) (holding that exclusion of evidence obtained during investigation by Postal Inspector that may have been beyond statutory authority was not appropriate because the investigation did not violate Petitioner's constitutional rights). Moreover, the Third Circuit Court of Appeals has held generally that the exclusionary rule is not appropriate for statuary violations. *Pennsylvania Steel Foundry & Mach. Co. v. Sec'y of Labor*, 831 F.2d 1211, 1218 (3d Cir. 1987)

(noting that violations of statutes exempt from the exclusionary rule). As such, Mr. Bell has failed to demonstrate that counsel was ineffective.[4]

### H. Ground 9

Finally, Mr. Bell contends that a violation of the Fifth Amendment guarantee of due process occurred when Inspector Busch exceeded his statutory authority by serving as a lead agent in the investigation. As discussed, the United States Postal Inspection Service has the authority "to the extent authorized by the Attorney General pursuant to agreement between the Attorney General and the Postal Service, in the enforcement of other laws of the United States, if the Attorney General determines that violations of such laws have a detrimental effect upon the operations of the Postal Service." 18 U.S.C.A. § 3061(b)(2). Mr. Bell ignores this provision of the statutory grant of authority. The United States Postal Inspection Service is a leading federal law enforcement agency in the investigation of identity takeovers under 18 U.S.C. § 1028(a). *See, e.g., United States v. Tolliver*, 451 F. App'x 97, 100 (3d Cir. 2011). As Mr. Bell was convicted under 18 U.S.C. § 1028(a), Inspector Busch did not exceed his statutory authority by serving as a lead agent in the investigation. As such, Mr. Bell's due process claims are meritless.

### I. Hearing

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motions, files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. §2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Although the baseline the movant must meet to

---

[4] While Mr. Bell's moving papers focus on the failure to object to the role Inspector Busch played in the investigation, the petitioner's brief regarding Ground 8 contends Mr. Bell's Fifth Amendment rights were violated when the Government and the Court engaged in an alleged *ex parte* communication without Mr. Bell present. The alleged *ex parte* communication relates to the Court's decision to allow the Government to amend the technical error in the indictment. *Id.* As already noted in section III.C, *supra*, no inference of an *ex parte* communication can be drawn from the record. Mr. Bell provides no evidence that any such communication occurred. Therefore, any claim that his conviction should be vacated based on the alleged *ex parte* communication in the absence of Mr. Bell himself, is groundless.

secure an evidentiary hearing is admittedly low, it is clear from the files and records of the case that Mr. Bell is entitled to no relief, and so he is not entitled to the hearing. *Booth*, 432 F.3d at 546.

### J. Certification of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certification of appealability should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination regarding whether a certificate should issue. Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that Mr. Bell has not exhibited a substantial denial of a constitutional right. A certificate will therefore not issue.

## IV. CONCLUSION

For the reasons outlined above, Mr. Bell's two motions to vacate his sentence under § 2255 will be denied and a Certificate of Appealability will not issue.

\*     \*     \*

An Order reflecting the above will follow.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
United States District Judge