IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| MIGUEL BELL | : | No. 09-672-1 |

**MEMORANDUM**

PRATTER, J.                                                                                  MAY 6, 2021

Miguel Bell moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing a variety of health concerns as well as the COVID-19 pandemic. The Government opposes his motion.[1] For the following reasons, the Court denies Mr. Bell's motion.

### BACKGROUND

**I.    Mr. Bell's Criminal Conviction**

A jury convicted Mr. Bell of one count of conspiracy, 11 counts of bank fraud, and 33 counts of aggravated identity theft for his role in a multi-million dollar fraud and identity theft ring. Mr. Bell was the ringleader of the group, and recruited bank and insurance company employees to give him the personal information of dozens of customers. Mr. Bell then used that information to carry out fraudulent transactions. People working for Mr. Bell would recruit "check runners" to conduct the fraudulent transactions, thus avoiding this conduct being traced back to the group. The check runners could keep a share of the profits for themselves.

When Mr. Bell was arrested in October 2009, the government seized his laptop which showed that he was still pursuing his fraudulent scheme. This laptop contained a spreadsheet of

---

[1]     Mr. Bell filed an initial Motion for Compassionate Release. (Doc. No. 322.) After the Government responded, Mr. Bell filed a "Supplemental Motion for Compassionate Release," which stated that the number of COVID-19 cases at FCI Schuylkill had increased. (Doc. No. 329.) The Court will consider the motions together.

1

fraudulent checks written against the accounts of over 100 individuals between May 28, 2008 and October 1, 2009. The total amount of those checks was more than $2,000,000. Following a jury trial, Mr. Bell was sentenced to 186 months' imprisonment.

These convictions were not Mr. Bell's first run-in with the law. Mr. Bell had previously been convicted of stolen property, forgery and theft by deception, criminal conspiracy, and several DUIs.

Mr. Bell is serving his sentence at FCI Schuylkill, with an anticipated release date of May 20, 2023. He has served approximately 138 months of his sentence and has credit for good conduct time of 15 months, for a total time credit of approximately 153 months.

## II. The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has stated that its "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[2] and it has taken significant measures to protect the health of the inmates in its charge. These measures include severely curtailing visitation, limiting the movement of inmates, paying special attention to physical distancing, and screening and isolating new inmates. As directed by the Attorney General, the BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[3] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136

---

[2] BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 4, 2021).

[3] This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement. 18 U.S.C. § 3624(c)(2).

2

§ 12003(b)(2). In April 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning with facilities that have seen the greatest incidence of COVID-19 transmission thus far.

The Court recognizes the COVID-19 pandemic's severity. The BOP's efforts at combating the effects of the pandemic at FCI Schuylkill were successful for most of 2020, with only one identified case of COVID-19 among the inmate population during the first eight months of that year. *See United States v. Rae*, No. 15-cr-432, 2020 WL 4544387, at *4 (E.D. Pa. Aug. 6, 2020) ("With only one reported positive inmate case of COVID-19 out of a population of 1,029, FCI Schuylkill appears to be responding to and defending against the threats of the virus in a vigorous and generally effective manner."). But near the end of 2020, the facility experienced an outbreak that the BOP responded to with extensive testing and quarantine measures. The results were largely successful. As of May 4, 2021, only one inmate and zero staff members were COVID-positive.[4] Overall, 552 inmates and 73 staff members have recovered from COVID-19 at FCI Schuylkill. There have been no COVID-19 related deaths at the facility.

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). However, a defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) after exhausting all administrative remedies.[5] *United States v. Ackerman*, No. 11-cr-740-KSM-1, 2020 WL 5017618, at *2 (E.D. Pa. Aug. 25, 2020).

---

[4] *See* BOP, *COVID-19 Coronavirus*, (last updated May 4, 2021), https://www.bop.gov/coronavirus (last visited May 4, 2021).

[5] A defendant may move for compassionate release under § 3582 after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

3

A court may grant a motion to reduce the term of imprisonment under § 3582 only if (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining this term. It provides that a defendant's non-terminal illness may be an extraordinary and compelling justification if "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.[6]

Section 3553(a) directs courts to consider multiple factors, including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The applicable

---

whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that Mr. Bell has exhausted his administrative remedies. (*See* Doc. No. 326.)

[6]   Although § 3582(c)(1)(A) mandates that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," a number of courts have held that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for amendments to § 3582(c)(1)(A) made by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020). *See also United States v. Spencer*, No. 15-cr-562, 2021 WL 565403, at *4 (E.D. Pa. Feb. 12, 2021). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 582(c)(1)(A)(i)." *Rodriguez*, 451 F. Supp. 3d at 398.

Sentencing Commission policy statement also requires a court to determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" prior to release. U.S.S.G. § 1B1.13. The defendant bears the burden of showing that a reduction in sentence is proper. *See Ackerman*, 2020 WL 5017618, at *3 (citing *United States v. Thornton*, Criminal No. 2:18-167-1, 2020 WL 4368155, at *3 (W.D. Pa. July 29, 2020)).

## DISCUSSION

Mr. Bell has not presented extraordinary and compelling reasons for his release. He argues that he has been diagnosed with high blood pressure, obesity, high cholesterol, and diabetes.[7] Indeed, his BOP medical records do show that his most recent blood pressure was 144/92, and that his BMI was 33.[8] But these records also show that Mr. Bell does not suffer from diabetes. Rather, he suffers from prediabetes, which is not recognized by the CDC as a COVID-19 risk factor.[9] Thus, the Court considers only whether Mr. Bell's obesity, high cholesterol, and high blood pressure warrant compassionate release.

---

[7] Mr. Bell also argues that BOP medical staff have not properly treated or investigated two additional medical conditions, namely problems he has had breathing which he believes is due to lung disease, and a lesion on his liver that was discovered by an X-ray. First, if Mr. Bell believes that he is not receiving adequate medical attention, he must ask to see a doctor. The Court takes notice that Mr. Bell has received multiple X-rays while incarcerated, including one which showed the lesion and another, in April 2020, which showed that his lungs were clear. So, the Court is without evidence to find that Mr. Bell has been denied diagnostic attention.

Second, his medical records do not show that he has been diagnosed with either lung or liver disease. To be sure, if he is diagnosed with a condition that is recognized as putting him at a higher risk for COVID-19, Mr. Bell may again seek relief. But, at present, Mr. Bell's allegations of liver and lung disease are not supported by any actual medical evidence, and therefore cannot be considered "extraordinary and compelling" reasons for early release.

[8] The CDC classifies a BMI between 30 and 40 as "obese," and a BMI above 40 as "severe obesity." *See People with Certain Medical Conditions*, Center for Disease Control and Prevention (last updated April 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 4, 2021).

[9] *See id.*

5

Other courts have consistently held that, in isolation, neither moderate obesity nor high blood pressure warrant compassionate release. *See United States v. Williams*, No. 15-cr-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) ("[O]besity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [a] sentence."); *United States v. Ackerman*, No. 11-cr-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) ("Hypertension, a condition that affects about 46% of the U.S. adult population . . . [is] not [an] 'extraordinary and compelling' condition[ ]." (alteration in original) (quoting *United States v. Colbert*, Case No. 99-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020))). Nor does the combination of these two conditions present an "extraordinary and compelling" case. *See United States v. Gonzalez*, No. 14-cr-015, 2021 WL 662496, at *2 (E.D. Pa. Feb. 19, 2021) (obesity and high blood pressure did not entitle inmate to compassionate release); *United States v. Morales-Ortiz*, No. 11-cr-143, 2021 WL 65477, at *5 (E.D. Pa. Jan. 7, 2021) (same); *United States v. Holmes*, No. 08-cr-495, 2020 WL 4504440, at *2 (E.D. Pa. Aug. 5, 2020) (same), *aff'd*, 839 F. App'x 681 (3d Cir. 2021). Finally, Mr. Bell's high blood pressure and elevated cholesterol appear to be well controlled at this time with medication provided to him by the prison. *See United States v. Moore*, No. 14-cr-315-6, 2020 WL 7264597, at *1 (E.D. Pa. Dec. 10, 2020) (denying motion for compassionate release where inmate's hypertension and high cholesterol were being appropriately managed with medication). Therefore, Mr. Bell has not met his burden under § 3582(c)(1)(A).

And even if Mr. Bell could show extraordinary and compelling reasons for early release, the 18 U.S.C. § 3553(a) factors counsel against releasing him. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release to inmate with "serious" health conditions because "the § 3553(a) factors weigh[ed]" against release). Although

Mr. Bell's crimes were not crimes of violence per se, they cannot be characterized as mere momentary unfortunate lapses in judgment. Rather, Mr. Bell was the ringleader of a multi-million dollar fraud and identity theft ring that spanned across the country and harmed many people. Mr. Bell had also violated the law many times in the past, having been convicted of forgery, theft by deception, criminal conspiracy, and multiple DUIs. These prior convictions, combined with the facts underlying the conviction for which Mr. Bell is currently serving time, show that Mr. Bell is a danger to the community, and that his sentence should deter future criminal conduct, given that it reflects the seriousness of his offense. *See* 18 U.S.C. § 3553(a). And although Mr. Bell has served 153 out of 186 months of his sentence (accounting for good time credit), which is over 80% of his sentence, this fact alone is not enough to justify early release. *See United States v. Smith*, No. 04-cr-472-1, 2020 WL 7353891, at *5 (E.D. Pa. Dec. 15, 2020) (acknowledging that the defendant had "served the bulk of his sentence" but denying motion for compassionate release because his medical conditions were minor and he continued to be a danger to the community).

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Bell's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

7